UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| SKYHOOK WIRELESS, INC., | ) ) ) | |
| Plaintiff, | ) ) | CIVIL ACTION |
| v. | ) ) | NO. 1:10-cv-11571-RWZ |
| GOOGLE INC., | ) ) | **REDACTED VERSION** |
| Defendant. | ) ) ) | |

**GOOGLE INC.'S MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION TO COMPEL THE PRODUCTION OF DOCUMENTS WITHHELD PURSUANT TO SKYHOOK WIRELESS INC.'S FIFTH REVISED SUPPLEMENTAL REDACTION LOG**

Defendant Google Inc. ("Google") respectfully moves for an order compelling Plaintiff Skyhook Wireless, Inc. ("Skyhook") to produce unredacted copies of an inventor's technical notebooks. Skyhook has redacted certain pages of these notebooks as purportedly privileged. In fact, they are not. The redacted passages are the inventor's notes to himself. They are not communications to an attorney, and are not immune from discovery even if—as Skyhook has belatedly claimed—the inventor intended to later seek legal advice on related issues. Google therefore seeks an order compelling Skyhook to produce those notebook pages corresponding to entries 2, 6-9, 11-13, and 15-17 on Skyhook's Revised Supplemental Redaction Log dated March 22, 2012.[1]

## I.   STATEMENT OF FACTS

Skyhook filed a patent infringement suit against Google on September 15, 2010, alleging Google infringes U.S. Patent Nos. 7,414,988, 7,433,694, 7,305,245, and 7,474,897 ("the patents-in-suit"). On August 8, 2011, Skyhook produced copies of four inventor notebooks in response to Google's First Set of Requests for Production. Each says "Farshid Alizadeh" on the cover under "Name," and they contain entries dated between May 25, 2005 and May 20, 2011. (Ex. B.) Dr. Farshid Alizadeh-Shabdiz is Skyhook Wireless Inc.'s Chief Scientist, and one of the named inventors of each patent-in-suit.[2] (Ex. C). Google believes that the notebooks are highly

---

[1] Although the Court may order Skyhook to produce the requested documents based solely on the insufficiency of Skyhook's log, Google requests that Skyhook provide unredacted copies of the disputed pages to the Court for *in camera* review to aid the Court's resolution of this Motion to Compel. Should Skyhook decline to do so voluntarily, Google requests that the Court require it to do so. For the Court's convenience, copies of the redacted pages produced by Skyhook that are at issue here are attached as Exhibit A. In the case of those notebook pages redacted in their entirety (*i.e.*, those corresponding to Entry Nos. 2, 6-7, 9, and 12-13), Google has included in the exhibit a few surrounding notebook pages for context.

[2] The other inventors named on the face of the patents-in-suit are Edward "Ted" Morgan, Skyhook's CEO and co-founder, Michael Shean, its Senior Vice President of Business Development and co-founder, and Russel Kipp Jones, another Skyhook employee. Skyhook has stated that it "does not have any additional inventor notebooks" either dated prior to May 25, 2005—even though it has claimed that three of the four patents-in-suit were conceived in 2004—or authored by the other three named inventors. (Exs. D, E.)

relevant to numerous issues in the case, including the nature of what Skyhook actually invented, the reduction to practice of the claimed inventions, whether and how Skyhook has used the claimed technology, and the invalidity of the patents-in-suit.

Skyhook withheld thirty-three pages of Dr. Alizadeh-Shabdiz's notebooks from its August production by redacting them, in whole or in part.  On December 2, 2011, the parties met and conferred regarding Skyhook's discovery responses, and Google requested Skyhook produce a log stating the basis for Skyhook's redaction of the inventor notebooks.[3]  On December 16, 2011, Skyhook produced a log in which it claimed that each of the thirty-three redactions from the inventor notebooks were based on the attorney-client privilege, and that some of the redactions were also based on the work product doctrine.  (Ex. F.)  Skyhook described the redacted pages as generally containing "Handwritten notes re: patent application," or "Handwritten notes re: patent search," but did not describe the notebook pages as communications to an attorney, much less identify any relevant attorney.  Google pointed out these deficiencies to Skyhook the same day.  (Ex. G.)

Skyhook produced a Supplemental Redaction Log on January 18, 2012.  (Ex. H.)  In it, Skyhook dropped its privilege claims as to numerous redactions, but maintained its claims as to others.  Again, Skyhook did not describe the notes as actual communications with an attorney, notably failing to identify any attorney as a recipient or even addressee of the purportedly privileged notes.  Instead, Skyhook somewhat vaguely listed at least one attorney name parenthetically in the "Basis for Redaction" column.  *See, e.g.,* Ex. H at entry 14 (listing "AC (Peter Dichiara)" as the basis for redacting undated "[h]andwritten notes re: patent application").

In early February, Google pointed out that Skyhook's Supplemental Redaction Log failed to substantiate Skyhook's privilege claims or comply with Federal Rule of Civil Procedure

---

[3] Although Skyhook has produced other redacted documents, and undoubtedly withheld documents in their entirety on a claim of privilege, the parties have not yet exchanged their complete privilege logs.  The only log produced to date by Skyhook is the log relating to its redactions from Dr. Alizadeh-Shabdiz's inventor notebooks.

26(b)(5) because the log did not describe the nature of the purportedly privileged communications. (Exs. I, H). Google also pointed out that Skyhook had not indicated that the redacted sections of the inventor notebooks reflected a communication with an attorney. (Ex. I.)

On February 14, 2012, Skyhook produced unredacted images for eleven previously-redacted pages as to which it had dropped its privilege claims. A review of those pages revealed that Skyhook had taken an unjustifiably expansive view of the attorney-client privilege. Based on the produced pages, it appears Skyhook in the first instance redacted nearly every reference to the word "patent" in Dr. Alizadeh-Shabdiz's notebooks. For example, Skyhook originally redacted the following text:



(Ex. J.) Until Google followed up, Skyhook had described this passage as: "Handwritten notes re draft description of invention," and claimed that it was an undiscoverable attorney-client communication. (Ex. F.)[4]

The parties met and conferred on February 14, and Skyhook produced a third version of its log on March 2, 2012. (Exs. K, L.) In its March 2 Revised Supplemental Redaction Log, Skyhook asserted for the first time that several redactions are handwritten notes containing legal

---

[4] This was not the first time Skyhook had made baseless privilege claims. Skyhook initiated litigation in Massachusetts state court on the same day it filed this patent infringement suit. In that case, Skyhook tried to hide facts that go to the heart of its unfair competition and interference with contract claims by asserting that a non-existent "settlement discussion privilege" covered correspondence from a third party stating why it actually terminated its contract with Skyhook. The documents Skyhook attempted to hide in that action are some of the key evidence in the case—including the third party's notice of termination of its contract with Skyhook, sent prior to suing Google. Google included several such documents in its Opposition to Skyhook's motion for preliminary injunction—a motion the court denied—and Google's subsequent motion to dismiss or in the alternative for summary judgment in that case. *Skyhook Wireless, Inc. v. Google Inc.*, Civil Action No. 2010-03652-BLS2 (Mass Super Ct. Feb. 18, 2011) [Dkt. #75]. It will do so again in its forthcoming renewed summary judgment motion to be filed after the completion of fact discovery.

advice from a meeting or discussion Dr. Alizadeh-Shabdiz had with Skyhook's patent or litigation counsel. (Ex. L.) Google does not seek those pages through this motion to compel. In that same March 2 log, however, Skyhook described for the first time fourteen redactions as Dr. Alizadeh-Shabdiz's handwritten notes, purportedly "prepared for purpose of obtaining legal advice" regarding a patent application, patent portfolio, or draft patent claims. (Ex. L.)

On March 12, Skyhook served another Revised Supplemental Redaction Log. (Ex. M.) Skyhook's fourth log is identical to its March 2 log except that Skyhook added a claim of privilege for yet another redacted passage. (Ex. M. at Entry No. 15.) The parties met and conferred again on March 19, at which time Skyhook confirmed that the disputed redactions are Dr. Alizadeh-Shabdiz's own notes, and that they are not addressed to any attorney. (Ex. N.) In response to Google's request that Skyhook clearly state the basis of its claim that the notebook pages may be protected as a communication, Skyhook agreed to get back to Google.

On March 22, Skyhook served a fifth version of its Revised Supplemental Redaction Log. (Ex. O.) In it, Skyhook withdrew certain additional privilege claims, and modified certain descriptions not at issue here. In correspondence accompanying its fifth log, Skyhook set out the basis of its privilege claims: "For redacted entries that were 'prepared for [the] purpose of obtaining legal advice,' we have confirmed that Dr. Alizadeh-Shabdiz discussed the information in his notes with the listed attorney(s)." (Ex. O (citing *United States v. DeFonte*, 441 F.3d 92, 96 (2d Cir. 2006)).)

Google seeks an order compelling Skyhook to produce unredacted copies of those pages corresponding to Entry Nos. 2, 6-9, 11-13, and 15-17 on Skyhook's March 22, 2012 Revised Supplemental Redaction Log because the inventor's notes in his invention notebooks are not protected by the attorney-client privilege or the litigation work product doctrine.

## II. SKYHOOK SHOULD PRODUCE UNREDACTED PAGES FROM THE INVENTOR'S NOTEBOOK

### A. The Law of the Attorney-Client Privilege and the Litigation Work Product Doctrine

The attorney-client privilege protects confidential communications made by a client to his or her attorney. *In re Spalding Sports Worldwide, Inc.*, 203 F.3d 800, 805 (Fed. Cir. 2000) (in assessing the applicability of the attorney-client privilege, "the central inquiry is whether the communication is one that was made by a client to an attorney for the purpose of obtaining legal advice or services")[5]; *see also In re Grand Jury Subpoena*, 274 F.3d 563, 571 (1st Cir. 2001). "Determining whether documents are privileged demands a highly fact-specific analysis—one that most often requires the party seeking to validate a claim of privilege to do so document by document." *In re Grand Jury Subpoena*, 662 F.3d 65, 71 (1st Cir. 2011) (citations omitted.)

> [T]he attorney-client privilege attaches only: (1) Where legal advice of any kind is sought (2) from a professional legal adviser in his capacity as such, (3) the communications relating to that purpose, (4) made in confidence (5) by the client, (6) are at his instance permanently protected (7) from disclosure by himself or by the legal adviser, (8) except the protection be waived.

*Id.* The party asserting the attorney client privilege has the burden of demonstrating its applicability to the documents or information at issue. *See Town of Norfolk v. U.S. Army Corps of Eng'rs*, 968 F.2d 1438, 1457 (1st Cir. 1992). "[I]t is important to bear in mind that the attorney-client privilege protects communications rather than information; the privilege does not impede disclosure of information except to the extent that disclosure would reveal confidential communications." *In re Grand Jury Subpoena Duces Tecum Dated Sept. 15, 1983*, 731 F.2d 1032, 1037 (2d Cir. 1984); *see also In re Grand Jury Subpoena*, 662 F.3d at 70 (recognizing that

---

[5] Federal Circuit law applies to the issue of whether the attorney-client privilege protects an inventor's notes that relate to substantive issues of patent law. *See Spalding*, 203 F.3d at 803 ("[W]e apply our own law to issues of substantive patent law.") As discussed below, the notebook pages are not protectable under either Federal Circuit or First Circuit precedent, and both courts follow well settled law regarding the requirements of the attorney-client privilege and the litigation work product doctrine.

rationale undergirding privilege is encouraging full and frank communications between lawyer and client).  Otherwise discoverable documents do not become protected by giving them to an attorney.  *See Pacamor Bearings, Inc. v. Minebea Co., Ltd.*, 918 F. Supp. 491, 511 (D.N.H. 1996). "The privilege is not limitless" and "courts must take care to apply it only to the extent necessary to achieve its underlying goals." *Lluberes v. Uncommon Prods., LLC*, 663 F.3d 6, 23-24 (1st Cir. 2011) (internal quotations, citation omitted).

"To be work product, the materials must be (1) documents and tangible things (2) prepared in anticipation of litigation or for trial (3) by the party or the party's representative." *United States v. Mass. Inst. of Tech.*, 957 F. Supp. 301, 305 (D. Mass. 1997) (citing Fed. R. Civ. P. 26(b)(3) and holding that committee minutes were not protectable work product).  "[T]he protection of the work product doctrine is limited to work in anticipation of litigation." *United States v. Randall*, 194 F.R.D. 369, 373 (D. Mass. 1999).  Thus, "[t]he work-product doctrine protects 'the files and the mental impression[s] of an attorney . . . reflected . . . in interviews, statements, memoranda, correspondence, briefs, mental impressions, personal beliefs, and countless other tangible and intangible ways' prepared in anticipation of litigation." *Id.* (quoting *Hickman v. Taylor*, 329 U.S. 495, 510-11 (1947)).  However, "it does not typically extend to underlying facts contained within those materials." *In re Grand Jury Subpoena*, 220 F.R.D. 130, 141 (D. Mass. 2004).  Nor does it apply to "'[m]aterials assembled in the ordinary course of business . . . or for other nonlitigation purposes[.]'" *Mass. Inst. of Tech.*, 957 F. Supp. at 305 (quoting Fed. R. Civ. P. 26(b)(3) advisory committee's note, and also noting, "The reported cases support a strict interpretation of the 'prepared in anticipation of litigation' requirement."). The party invoking the doctrine's protections bears the burden of establishing that the information sought to be discovered constitutes attorney work product.  *Winter Panel Corp. v.*

*Reichhold Chems., Inc.*, 124 F.R.D. 511, 513 (D. Mass. 1989).

### B.      Skyhook's Redactions Are Not Protectable Attorney-Client Communications

#### 1.      The notes are not privileged because they do not constitute a communication with an attorney.

In each case, Skyhook's fifth privilege log describes the redacted text at issue as handwritten notes "prepared for purpose of obtaining legal advice" regarding either a patent application, patent portfolio, or draft patent claims.  (Ex. O at entries 2, 6-9, 11-13, and 15-17.)  Skyhook has claimed that each is privileged.  (*Id.*)

Importantly, Skyhook does *not* claim that the notebook pages themselves constitute a communication with an attorney.  Skyhook has confirmed that the notes are not addressed to any attorney, and it would be implausible to suggest that Dr. Alizadeh-Shabdiz was writing to counsel in his own notebooks.  (Ex. N.)  Skyhook's log notably fails to identify any attorney as a recipient of the notebook pages.  (Ex. O.)  Nor has Skyhook claimed that the notebook pages sought by this Motion memorialize any conversation between Dr. Alizadeh-Shabdiz and counsel.  Skyhook's attorney-client privilege claims therefore fail because it has not shown the fundamental prerequisite for the privilege: a communication.  *See, e.g., Spalding*, 203 F.3d at 805; *In re Grand Jury Subpoena Duces Tecum Dated Sept. 15, 1983*, 731 F.2d at 1037 (the "attorney-client privilege protects communications rather than information").

#### 2.      Dr. Alizadeh-Shabdiz's notes to himself are not privileged even if made "for purpose of obtaining legal advice" about patent matters.

Because it cannot claim that the notes themselves constitute a communication, Skyhook claims that Dr. Alizadeh-Shabdiz made notes *to himself* in his technical notebooks "for purpose of obtaining legal advice" about patent matters.  Much like a memorandum to file, an inventor's notebooks provide for a way for an inventor to record his thoughts and research for his own use.  They are not privileged.  *See, e.g., McCook Metals LLC v. Alcoa Inc.*, 192 F.R.D. 242, 255 (N.D.

Ill. 2000) (holding that "technical drawings and sketches, tables and test results produced from the inventors and engineering departments and sent to the patent department" were not privileged because they contained no request for legal advice). Court have recognized that file memoranda prepared by non-legal personnel containing business information are clearly not privileged where they are not communications "directed to anyone for purposes of legal advice." *Sneider v. Kimberly-Clark Corp.*, 91 F.R.D. 1, 6 (N.D. Ill. 1980). The *Sneider* court also recognized that "Confidential research information is not the equivalent of confidential legal communications. Therefore, it is consistent and logical to compel the production of [] documents relating to the patent" generated by the inventors. 91 F.R.D. at 5.

Even if Skyhook could substantiate the claim that Dr. Alizadeh-Shabdiz was making notes to himself "for purposes of obtaining legal advice"—a doubtful assertion it did not make on the first two versions of its privilege log—that would not bring the redacted inventor notebook pages within the privilege. A writing is not privileged merely because it is made with potential legal issues in mind. As the Second Circuit has explicitly recognized, "A rule that recognizes a privilege for any writing made with an eye toward legal representation would be too broad." *United States v. DeFonte*, 441 F.3d 92, 96 (2d Cir. 2006). "[D]iscussions that anticipate a privileged communication are not themselves privileged. To hold otherwise would expand the attorney-client privilege without limit, since countless communications within an organization could be considered preparatory to seeking legal advice." *Duttle v. Bandler & Kass*, 127 F.R.D. 46, 52 (S.D.N.Y. 1989).

Skyhook would specifically rely on the Federal Circuit's holding in *In re Spalding Sports Worldwide, Inc.*, 203 F.3d 800 (Fed. Cir. 2000). (Exs. P, O.) There, the Federal Circuit held that an "invention record" that the inventors used to communicate with the corporation's patent

attorneys was subject to the privilege. The court described the "invention record" at issue in that case as a type of "standard form[] generally used by corporations" and filled out by the inventors "to disclose to the corporation's patent attorneys that an invention has been made and to initiate patent action. They are usually short documents containing space for such information as names of inventors, description and scope of invention, closest prior art, first date of conception and disclosure to others, dates of publication, etc." *Id.* at 802 n.2. The Federal Circuit held that the "invention record" was subject to the attorney-client privilege because it was prepared pursuant to company policy as a request for legal advice regarding the patentability of the invention, and it was then sent to the corporation's in-house legal department for the purpose of obtaining that advice. *Id*. at 805. The invention record form thus constituted a communication with an attorney. *Id*.

Here, the claim that the notes were "prepared for [the] purpose of obtaining legal advice" is a conclusory effort to shoe-horn them into *Spalding*, and one for which there is no evidence other than Skyhook's *ipse dixit*. Unlike *Spalding*, the inventor's notebooks are not a standard-form request for legal advice, and Skyhook has not claimed that Dr. Alizadeh-Shabdiz's actually shared his notes with counsel. *Spalding* does not protect any and every document "prepared for [the] purpose of obtaining legal advice"; it protects only *communications* made for the purpose of seeking legal advice. *Spalding*, 203 F.3d at 805.

Moreover, district courts have noted that *Spalding* protects only communications, not information. *See, e.g., Vasudevan Software, Inc. v. Int'l Bus. Mach. Corp*., No. 09-05897, 2011 WL 1599646 *2 (N.D. Cal. Apr. 27, 2011) ("*Spalding* does not insulate otherwise discoverable information simply because it is included in a privileged communication. The decision merely clarified that privileged communications themselves—in that case, an invention disclosure

form—are not discoverable even if the subject matter of the communication is discoverable."). *Spalding* thus does not aid Skyhook.

### 3. The notes are not privileged even if "the information" in them was disclosed to counsel in separate conversations.

Finally, Skyhook has asserted in correspondence that Dr. Alizadeh-Shabdiz "discussed *the information* in his notes with the listed attorney(s)." (Ex. O (emphasis added) (citing *United States v. DeFonte*, 441 F.3d 92, 96 (2d Cir. 2006)).) Even if Skyhook could substantiate that factual assertion, it still would not justify the redactions. Discussing the same information found in a document with counsel does not put the document beyond the reach of discovery, even if the conversation itself is privileged. Such a rule would expand the privilege beyond all recognition, and allow a litigant to inoculate all manner of documents and factual information from discovery simply by sharing the information with counsel. That is not the law. It is well settled, for example, that an unprivileged document does not become privileged simply because it is given to an attorney. *See, e.g., Pacamor Bearings, Inc. v. Minnebea Co., Ltd.*, 918 F. Supp. at 511 ("Attachments which do not, by their content, fall within the realm of privilege cannot become privileged by merely attaching them to a communication with the attorney."). Likewise, notes made on an inventors own initiative—even if, unlike here, they are later given to an attorney— do not fall "within the attorney-client privilege because although they came into counsel's possession they were not made as communications from client to attorney." *See Larson v. Harrington*, 11 F. Supp. 2d 1198, 1203 (E.D. Cal. 1998). Discussing information about the inventions with counsel does not make that information undiscoverable in later litigation regarding those purported inventions.

Skyhook's reliance on *DeFonte* is misplaced. There, an incarcerated non-party witness had kept a journal that memorialized conversations with her attorney, as well as events in her

life, including discussions with the defendant and with prosecutors. *DeFonte*, 441 F.3d at 95. The witness's notes of her discussions with her counsel were clearly privileged. *Id*. As to the second group, the non-party witness claimed these "were made for the purpose of later discussions with her attorneys," but it was undisputed that the notes were never delivered to counsel. The Second Circuit stated that if the uncommunicated notes were "an outline of what a client wishes to discuss with counsel," and reflected what was in fact subsequently discussed with counsel, they could be protected by the privilege. *Id*. at 96 (remanding for consideration of the factual question).

*DeFonte* does not aid Skyhook because plaintiff has never claimed that the redacted pages are Dr. Alizadeh-Shabdiz's agenda for an upcoming meeting with counsel, and that those agenda items were in fact discussed. Rather, Skyhook is quite plainly claiming that the inventor "discussed the information in his notes" at some point with an attorney. Put another way, Skyhook is claiming that it can hide facts in discovery because the facts are pertinent to later conversations with counsel. But facts are not privileged; only communications are, and only then if all of the elements of the privilege are met.

    **C.**    **Skyhook May Not Withhold the Inventor's Notes Based on the Litigation Work Product Doctrine.**

Skyhook has asserted that one of the withheld pages is protected from discovery under the litigation work-product doctrine. Specifically, it asserts the work product protection as to a June 29, 2010 entry that it now describes as "[h]andwritten notes prepared for purpose of obtaining legal advice re: patent portfolio." (Ex. O at Entry No. 2.)

Skyhook makes no attempt to show that Dr. Alizadeh-Shabdiz prepared these notes in anticipation of specific litigation, as required for the work product doctrine to apply. *See Mass. Inst. of Tech.*, 957 F. Supp. at 305; *see also In re Grand Jury Subpoena*, 220 F.R.D. 130, 146 (D.

Mass. 2004) ("[A] party seeking to assert that materials were prepared 'in anticipation of litigation' must state with some specificity which litigation was anticipated, and what nexus exists between the anticipated litigation and the contents of the materials in question or the motivation for their creation."). "The document must be prepared because of the prospect of litigation when the preparer faces an actual claim or a potential claim following an actual event or series of events that reasonably could result in litigation." *Mass. Inst. of Tech.*, 957 F. Supp. at 305 (quoting *National Union Fire Ins. Co. v. Murray Sheet Metal Co.*, 967 F.2d 980, 984 (4th Cir. 1992)). Skyhook has made no attempt at the required showing.

To the contrary, Skyhook's log specifically states that the redacted notes relate to its "patent portfolio," which suggests the notes are related to patent prosecution rather than a particular anticipated litigation. The "work-product doctrine is inapplicable to documents prepared for, or in anticipation of, submission to the [U.S.] Patent [and Trademark Office]. The prosecution of a patent is not, standing alone, in anticipation of litigation." *Leviton Mfg. Co. v. Greenberg Traurig LLP*, Case No. 09-Civ-8083, 2010 WL 4983183, at *8 (S.D.N.Y. Dec. 6, 2010) (citing cases). Accordingly, Skyhook has not established that Dr. Alizadeh-Shabdiz's June 29, 2010 handwritten notes are protected by the work product doctrine, and they should be produced.

### III. CONCLUSION

For the foregoing reasons, Google respectfully requests this Court order Skyhook to produce unredacted pages from the inventor notebooks that correspond to entries 2, 6-9 , 11-13, and 15-17 from Skyhook's Revised Supplemental Redaction Log dated March 22, 2012.

Dated: March 27, 2012

Respectfully submitted,

GOOGLE, INC.

By its attorneys,

/s/  Susan Baker Manning
Jonathan M. Albano, BBO #013850
jonathan.albano@bingham.com
BINGHAM McCUTCHEN LLP
One Federal Street
Boston, MA  02110-1726, U.S.A.
617.951.8000

William F. Abrams *(admitted pro hac vice)*
william.abrams@bingham.com
BINGHAM McCUTCHEN LLP
1900 University Avenue
East Palo Alto, CA 94303-2223
650.849.4400

Robert C. Bertin *(admitted pro hac vice)*
robert.bertin@bingham.com
Susan Baker Manning *(admitted pro hac vice)*
susan.manning@bingham.com
BINGHAM McCUTCHEN LLP
2020 K Street, NW
Washington, DC 20006-1806
202.373.6000